UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HISTORICAL EASTERN PEQUOT TRIBE,**<br><br>Plaintiff,<br><br>v.<br><br>**OFFICE OF FEDERAL ACKNOWLEDGMENT,**<br><br>Defendant. | Civil Action No. 23-54 (JEB) |

## MEMORANDUM OPINION

Confronted with the daunting task of choosing a whaling ship on which to voyage, Ishmael selects the long-seasoned and weather-stained Pequod.  "Pequod, you will no doubt remember, was the name of a celebrated tribe of Massachusetts Indians," he says, "now extinct as the ancient Medes."  Herman Melville, Moby-Dick 77 (Penguin Books 1992) (1851).

As reliable a narrator as Ishmael usually was, here he was wrong twice over.  It turns out the Pequots are neither local to Massachusetts nor extinct.  In fact, they have been living in Connecticut for centuries, and one group of them — the Historical Eastern Pequot Tribe — has been attempting to gain federal recognition for over fifty years.  Its most recent attempt came in 2016, when the Tribe wrote to the Department of the Interior's Office of Federal Acknowledgment, seeking recognition.  OFA wrote back, explaining that the Tribe was ineligible.  The Tribe tried to appeal, and an administrative law judge concluded — in an opinion styled a "Recommended Decision" — that the Tribe's purported appeal should be dismissed.

Six years later, the Tribe filed this action against OFA.  It challenges not Melville's apparent spelling, geography, and history errors, but rather the Department's alleged delay in

1

issuing a final determination on the ALJ's Recommended Decision, which, it says, is unreasonable under the Administrative Procedure Act. Plaintiff also asks the Court to review "any decision deemed final" under the APA's arbitrary-and-capricious standard and to order "the Bureau of Indian Affairs to acknowledge that [Plaintiff is] an American Indian tribe." ECF No. 17 (Second Am. Compl.) at 5. OFA now moves to dismiss, advancing both jurisdictional and merits arguments. As the Court concludes that Plaintiff lacks standing to bring an unreasonable-delay challenge and that its other two claims are deficient, it will grant the Motion.

**I.   Background**

    A.  Legal Background

In the context of federal Indian law, "recognition" or "acknowledgment" refers to a "formal political act confirming the tribe's existence as a distinct political society, and institutionalizing the government-to-government relationship between the tribe and the federal government." Cal. Valley Miwok Tribe v. United States, 515 F.3d 1262, 1263 (D.C. Cir. 2008) (citation omitted); see 25 C.F.R. § 83.11. Federally recognized tribes are entitled to a panoply of benefits that non-recognized tribes are not. Id. at 1263–64; see 25 C.F.R. § 83.2. There are three ways a tribe may be recognized: (1) through an act of Congress, (2) through the procedures in 25 C.F.R. Part 83, or (3) through a federal court's decision. See 25 U.S.C. § 5130 (note). Only the second is relevant here.

A tribe seeking recognition under Part 83 must submit a "documented petition" establishing that it meets certain criteria, including that it "has been identified as an American Indian entity" since 1900, "comprises a distinct community" that has existed since then, and has also "maintained political influence or authority over its members" since then. See 25 C.F.R. §§ 83.11, 83.20. If the petitioner can prove that it was "previously acknowledged as a federally

recognized Indian tribe," however, it need not establish that it meets those criteria and may instead demonstrate that it satisfies more limited criteria. Id. § 83.12. Conversely, if the petitioner was previously denied acknowledgment under Part 83, it "cannot [subsequently] be acknowledged." Id. § 83.4(d).

For each documented petition, OFA publishes in the Federal Register either a "positive" or "negative" "proposed finding," summarizing its analysis of whether the petitioner meets the applicable criteria. Id. §§ 83.26(b)(3)–(5), 83.33. That proposed finding is followed by a comment period and a response period, after which a petitioner subject to a negative proposed finding may elect a hearing before an administrative law judge. Id. §§ 83.35–83.38. After any such hearing, the ALJ issues a recommended decision, which is sent to the Assistant Secretary of Indian Affairs (AS-IA). See 43 C.F.R. § 4.1051(a); 25 C.F.R. § 83.39(d). The AS-IA then issues a final determination in the Federal Register. See 25 C.F.R. § 83.42.

B.  Factual and Procedural Background

In the 1970s and 1980s, two factions of the Historical Eastern Pequot Tribe — the Eastern Pequot Indians of Connecticut and the Paucatuck Eastern Pequot Indians of Connecticut — sought federal acknowledgment under Part 83. See Second Am. Compl., ¶¶ 9–10. The AS-IA issued a "Final Determination" in 2002, concluding that the Tribe — represented by and consisting of those two factions — satisfied the acknowledgment criteria. See 67 Fed. Reg. 44,234 (Jul. 1, 2002); see also Second Am. Compl., ¶ 11. Pursuant to the regulations then in effect, see 25 C.F.R. § 83.11(a)(1) (2005), the State of Connecticut and several municipalities sought reconsideration. See Second Am. Compl., ¶ 12. Finding multiple grounds for reconsideration, the Interior Board of Indian Appeals vacated and remanded the not-very-aptly

3

titled Final Determination "for further work and reconsideration." In re Fed. Acknowledgment of the Historical E. Pequot Tribe, 2005 WL 2672008 (I.B.I.A. May 12, 2005).

In 2005, the AS-IA issued a "Reconsidered Final Determination" concluding that the Tribe did not satisfy the criteria for acknowledgment. See 70 Fed. Reg. 60,099 (Oct. 14, 2005); see also Second Am. Compl., ¶ 13. The Reconsidered Final Determination became final and effective upon its publication, see 25 C.F.R. § 83.11(h)(3) (2005); 70 Fed. Reg. at 60,099, 60,101, but the Tribe nonetheless sought reconsideration. See Second Am. Compl., ¶ 14. The Interior Board of Indian Appeals dismissed that request for lack of jurisdiction. In re Fed. Acknowledgment of the E. Pequot Indians of Conn. and the Paucatuck E. Pequot Indians of Conn., 2006 WL 596715 (I.B.I.A. Jan. 13, 2006). Not content with that dismissal, a group purporting to represent the Tribe filed an action in federal court, which was dismissed. Historic E. Pequots v. Salazar, 934 F. Supp. 2d 272 (D.D.C. 2013).

Fast forward to May 2016, when the Tribe, hoping that a different route might yield a successful outcome, sent OFA a packet of materials asking it to "declare and reaffirm" the Tribe's "status as a previously federally acknowledged tribe." ECF No. 16-1 (2016 OFA Letter); see Second Am. Compl., ¶ 16. OFA responded with a letter advising the Tribe that the Part 83 process — i.e., filing a "documented petition," 25 C.F.R. § 83.20 — was "the sole administrative avenue for acknowledgement as an Indian tribe," and that an entity that has been previously denied acknowledgment under Part 83 was ineligible. See 2016 OFA Letter; ECF No. 19 (Opp.) at 6. OFA explained that, because the Tribe had "exhausted both its administrative and judicial remedies," its only "alternative avenue to obtain Federal acknowledgment would be congressional legislation." 2016 OFA Letter. Treating that letter as if it were a "negative proposed finding" published in the Federal Register and invoking the regulation authorizing a

4

petitioner receiving such a finding to elect a hearing before an ALJ, see 25 C.F.R. § 83.38, the Tribe sought such a hearing.  See 2016 OFA Letter.

In January 2017, an ALJ issued a "Recommended Decision," concluding that the Tribe's notice of appeal and hearing request should be dismissed for lack of jurisdiction.  See ECF No. 16-2 (Recommended Decision); see also Second Am. Compl., ¶ 17.  He explained that the Tribe was a "previously denied petitioner" that could not be acknowledged under Part 83 and that, in any event, the Tribe had not received a "negative proposed finding" appealable under 25 C.F.R. § 83.38.  See Recommended Decision at 16.  As described in the analysis below, there is some dispute about what happened next.

In any event, six years after the ALJ issued the Recommended Decision, Plaintiff filed this suit against OFA in January 2023.  See ECF No. 1 (Compl.).  It subsequently filed an Amended Complaint and a Second Amended Complaint, the latter of which is the operative pleading here.  See ECF No. 2 (Am. Compl.); Second Am. Compl.  Parsing the causes of action in that Second Amended Complaint is no easy task, not least because two seem to appear only in the "Prayer for Relief."  Second Am. Compl. at 5.  As best the Court can tell, and reading the operative Complaint generously, Plaintiff appears to advance three claims: (1) the Department's alleged delay in acting on the Recommended Decision is unreasonable under the APA, see id., ¶¶ 2, 18–20; see also 5 U.S.C. §§ 555(b), 706(1); (2) insofar as the Department has acted on the Recommended Decision, its action was arbitrary, capricious, or contrary to law under the APA, see Second Am. Compl. at 5; see also 5 U.S.C. § 706(2)(A); and (3) the Department should be ordered to federally acknowledge the Tribe.  See Second Am. Compl. at 5.  Defendant now moves to dismiss.  See ECF No. 16 (MTD).

## II.     Legal Standard

Defendant's Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  When a defendant brings a Rule 12(b)(1) motion, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (citation omitted).

Rule 12(b)(6), conversely, provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted."  In evaluating a motion to dismiss under that Rule, the court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted).  A court need not accept as true, however, "a legal conclusion couched as a factual allegation." Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (citation omitted).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A plaintiff may survive a

Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56.

**III.   Analysis**

In seeking dismissal, Defendant first argues that the Court lacks jurisdiction over Plaintiff's unreasonable-delay claim because the Department has already acted on the Recommended Decision. See MTD at 11–14. Next, OFA contends that the Tribe's arbitrary-and-capricious claim is deficient because it fails to target a discrete, final agency action. Id. at 18–19. Last, as to Plaintiff's claim for relief seeking federal acknowledgment, Defendant asserts that the Tribe has not provided any basis for ordering the Department to recognize it. Id. at 17–18. Agreeing that all counts must be dismissed, the Court discusses them in turn.

    A.  Unreasonable-Delay Challenge

The Government initially contends that the Tribe lacks standing to bring its unreasonable-delay claim. Id. at 11–14, 13 n.8. To demonstrate standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). It is well established that "a plaintiff must demonstrate standing for each claim he seeks to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). And a "deficiency on any one of the three prongs suffices to defeat standing." U.S. Ecology, 231 F.3d at 24. On Plaintiff's unreasonable-delay claim, standing deficiencies abound.

To start, the Tribe articulates no injury stemming from the Department's alleged delay in acting on the Recommended Decision. Cf. Khan v. Blome, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022) (standing where visa applicant alleged that delay in receiving decision within reasonable time period caused him "significant financial and other hardship"). Rather, Plaintiff

asserts that it "has been deprived of title to 8,000 acres promised to the tribe as recognition of their support of the colonies in King Philip's War in the 17th century," and its members "have been deprived of property, had their legacy erased, [and] been stripped of the benefits of promises long ago made." Second Am. Compl., ¶¶ 6, 8. As Plaintiff admits, however, those injuries are "a result of the lack of federal recognition," id., ¶ 6, not the Department's alleged delay in acting on the Recommended Decision. The only injuries alleged, therefore, cannot confer standing here.

The Tribe's unreasonable-delay claim fares no better on the redressability front. "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663–64 (D.C. Cir. 1996). Here, the "relief sought" is an order "requiring the agency to issue a final determination of the Recommended Decision." Second Am. Compl. at 5. Plaintiff confronts two independent hurdles to showing redressability.

First and foremost, OFA explains that, contrary to Plaintiff's factual allegations, the Department has acted on the Recommended Decision. See MTD at 12–14. Specifically, it asserts that in May 2019, a State of Connecticut official wrote to Tara Sweeney, then-AS-IA, requesting an update on the Recommended Decision. Id. at 8–9. The next month, Sweeney sent a response, copying Plaintiff's counsel, stating: "The Department of the Interior . . . considers this matter to be closed. The Department does not anticipate further consideration of the 'Recommended Decision' or any other action with regard to [the Tribe]." Id. at 9. The AS-IA's letter also reiterated the ALJ's conclusion that the Tribe is ineligible to petition under Part 83 and "must pursue any future attempts for Federal acknowledgment through [an] Act of Congress."

8

Id.  OFA attaches both letters to its Motion.  See ECF Nos. 16-3 (2019 Connecticut Letter); 16-4 (2019 AS-IA Letter).

Defendant asserts that, because the Department has already issued a final determination on the Recommended Decision — *viz.*, the 2019 AS-IA Letter — there is no further relief for the Court to grant.  See Reply at 5.  Issuing an order requiring Interior to take an action it has already taken could not possibly alleviate any injury Plaintiff is experiencing.  See Fla. Audubon Soc'y, 94 F.3d at 663–64.

Perhaps realizing as much, the Tribe asks the Court not to "rely[] upon" the 2019 AS-IA Letter, positing that it is not judicially noticeable.  See Opp. at 4–6 (citing Rule 12(b)(6) cases).  Even if Plaintiff were correct that the Letter could not be relied on in a Rule 12(b)(6) inquiry, however, the "[C]ourt must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to resolve [a] Rule 12(b)(1) motion."  Simon v. Republic of Hungary, 77 F.4th 1077, 1116 (D.C. Cir. 2023) (cleaned up).  It is, therefore, entirely appropriate to consider the Letter here, the authenticity of which the Court has no reason to doubt.

Plaintiff next insinuates that the 2019 AS-IA Letter does not constitute Interior's final action on the Recommended Decision because it is merely "correspondence," not an agency "ruling or determination."  Opp. at 4.  The Tribe's suggestion seems to be that there is some further action that the Court could order Interior to take.  The Court is not convinced.

To be "final," an agency action "must mark the 'consummation' of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature," and it must be an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (citation omitted).  It is well established that agency correspondence that meets those requirements constitutes final

9

agency action.  See, e.g., Ipsen Biopharmaceuticals, Inc. v. Azar, 943 F.3d 953, 958 (D.C. Cir. 2019); Rhea Lana, Inc. v. Dep't of Lab., 824 F.3d 1023, 1030 (D.C. Cir. 2016).

In this case, the Letter itself stated that the Department "considers this matter to be closed" and "does not anticipate further consideration of the 'Recommended Decision' or any other action with regard to [the Tribe]."  2019 AS-IA Letter.  It made clear that it both marked the "consummation" of Interior's decisionmaking process with respect to the Recommended Decision and represented an action "from which legal consequences will flow" — namely, that the Tribe could not proceed under Part 83 and would have to direct its efforts to Congress. Bennett, 520 U.S. at 178.  The Letter indicated in no uncertain terms that it was Interior's "'last word on the matter' in question."  Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 478 (2001).

The Tribe, for its part, does not seriously dispute that.  Instead, it points out that "[a]t the time of the filing of the complaint, [Interior] did not list a final decision regarding this matter on its list of petitions on a public website."  Opp. at 3; see Second Am. Compl., ¶ 19.  As Defendant explains, however, that is irrelevant.  See Reply at 8.  Interior's website lists only the status of "documented petition[s]," 25 C.F.R. §§ 83.1, 83.22, and the Department did not consider the packet of materials that the Tribe submitted in 2016 to qualify as such.  See Reply at 9.

Plaintiff last asserts that "it is expected in discovery that the agency will not be able to prove it sent this letter, and tribal representatives are expected to deny receiving it."  Opp. at 5. Even if that is true, it is beside the point for purposes of the redressability analysis.  What matters here is that Interior has already taken the action that Plaintiff asks the Court to order it to take — and that is true regardless of whether Plaintiff knew it or not prior to filing suit.  Indeed, courts regularly dismiss unreasonable-delay claims when the agency takes the allegedly delayed action

during litigation.  See, e.g., Conservation Force, Inc. v. Jewell, 733 F.3d 1200, 1205 (D.C. Cir. 2013); Rashidi v. U.S. Dep't of State, 2023 WL 6460030, at *1 (D.D.C. Oct. 4, 2023).

That is not all.  Even if there were no 2019 AS-IA Letter, Plaintiff would face a second redressability problem: its choice of Defendant.  OFA's role in Part 83 is limited to reviewing documented petitions and issuing proposed findings.  See 25 C.F.R. §§ 83.1, 83.23–39.  Those findings are reviewable by an ALJ in a separate office — the Office of Hearings and Appeals. Id. §§ 83.1, 83.39.  An ALJ's recommended decision is, in turn, reviewable by the AS-IA, who oversees both OFA and OHA, among other offices.  Id. §§ 83.40–46.  Plaintiff has sued OFA for allegedly delaying a decision on the Recommended Decision, yet absent from the operative Complaint are any "facts suggesting that the [alleged] delay[] at issue . . . [is] caused by [OFA] or that there is any action [OFA] could take to hasten review" of the Recommended Decision. Rashidi, 2023 WL 6460030, at *3.  In fact, the Tribe does not even "insinuat[e] that [OFA] might be responsible for, and able to remedy, such delay[]."  Id. (dismissing claims where plaintiffs merely insinuated that defendant might be responsible for, and able to remedy, delay because that was "too speculative a basis for this Court's jurisdiction").  The Court would, therefore, dismiss this claim even if it were not considering the 2019 AS-IA Letter.

B.  Challenge to "Any Decision Deemed Final"

That brings us to Plaintiff's second claim: that "any decision deemed final [i]s relying upon an arbitrary and capricious reading of the record before the agency."  Second Am. Compl. at 5.  OFA contends that this count must be dismissed because the Tribe has never identified the discrete action that it is challenging.  See MTD at 18–19.  Plaintiff's Opposition fails to address that contention, effectively conceding it.  See Bautista-Rosario v. Mnuchin, 568 F. Supp. 3d 1, 9 (D.D.C. 2021).  Regardless, the Court agrees that the claim is inadequately pled under the APA.

11

As discussed, "[t]o state a claim under the APA, a plaintiff must challenge a 'final agency action.'" Statewide Bonding, Inc. v. DHS, 980 F.3d 109, 114 (D.C. Cir. 2020). The plaintiff, not the court, must "identify" the challenged "final agency action." Elk Run Coal Co. v. U.S. Dep't of Lab., 804 F. Supp. 2d 8, 30 (D.D.C. 2011). Because the Tribe has not done so, the Court is left to guess what action it thinks was arbitrary, capricious, or contrary to law. That alone is ground for dismissal. See id. (dismissing claim that "fails to identify one or more final agency actions that [p]laintiffs ask this Court to review"); Fraternal Ord. of Police v. Gates, 602 F. Supp. 2d 104, 107–08 (D.D.C. 2009) (same where "Court [was] left to guess" the action challenged).

Even if the Tribe had specified in the operative Complaint that the target of its challenge was the 2019 AS-IA Letter, which seems the most obvious candidate (even though Plaintiff initially contended that it was never sent), the claim still would not survive. It would first encounter one of the same standing problems described above: Plaintiff's choice of defendant. The AS-IA, not OFA, issued that Letter. Even if the Tribe could establish standing for a claim targeting the Letter, moreover, it would encounter a second problem: the operative Complaint is devoid of any facts that could lead a reasonable court to conclude that the Letter was arbitrary, capricious, or contrary to law. While "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. It has not done so here. Its challenge to "any decision deemed final," Second Am. Compl. at 5, will therefore be dismissed.

C. Alleged Entitlement to Acknowledgment

Plaintiff last asks the Court for "[a]n order directing the Bureau of Indian Affairs to acknowledge that the Historical Eastern Pequot Tribe [i]s an American Indian tribe." Id. at 5.

12

OFA offers a plethora of reasons for dismissing this claim for relief. See MTD at 14–18. The Court agrees that, however it is construed, the count does not survive.

Insofar as this claim merely seeks "a form of relief to redress the other claims asserted by Plaintiff," as its "moniker" suggests, it must fall because the Court dismisses the "actual substantive counts" discussed above. Statewide Bonding, Inc. v. DHS, 422 F. Supp. 3d 35, 42 (D.D.C. 2019), aff'd, 980 F.3d 109 (D.C. Cir. 2020) (quoting Base One Techs., Inc. v. Ali, 78 F. Supp. 3d 186, 199 (D.D.C. 2015)); see Dentons US LLP v. Republic of Guinea, 208 F. Supp. 3d 330, 341 (D.D.C. 2016) ("[A] request for injunctive relief is a remedy and does not assert any separate cause of action[.]").

Insofar as it is purporting to be "a freestanding cause of action," Base One Techs., 78 F. Supp. 3d at 199, conversely, it is infirm. The only source of law Plaintiff invokes is the APA, yet the operative Complaint — once again — does not identify a final agency action that it seeks to challenge in this count. See Statewide Bonding, Inc., 980 F.3d at 114. To the extent that this claim is targeting the 2019 AS-IA Letter, the Court has already explained that the Tribe has sued the wrong Defendant and failed to allege any facts stating that the Letter was arbitrary, capricious, or contrary to law. See Section III.B, supra. To the extent that Plaintiff seeks to challenge Interior's determination that the Tribe does not satisfy the acknowledgment criteria, this lawsuit comes 12 years too late; Interior made that determination in 2005. See 70 Fed. Reg. 60,099; MTD at 17 n.9; 5 U.S.C. § 2401(a) (six-year statute of limitations under APA).

Perhaps the Tribe means to argue that Interior is unlawfully withholding federal recognition. See 5 U.S.C. § 706(1) (empowering courts to "compel agency action unlawfully withheld"). If that is so, the claim founders because the operative Complaint does not allege that Interior "failed to take a discrete . . . action that it is required to take." Norton v. S. Utah

13

Wilderness All., 542 U.S. 55, 64 (2004); see Ctr. for Biological Diversity v. Zinke, 260 F. Supp. 3d 11, 24 (D.D.C. 2017).  Indeed, OFA correctly observes that "nothing in . . . the Complaint[] provides any factual or legal allegations as to why the Court must, can, or should order the Department to federally acknowledge [Plaintiff]."  MTD at 18.

To put it simply: a pleading must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 556 U.S. at 678, yet Plaintiff's claim concerning its alleged entitlement to acknowledgment is barely even that.  See Second Am. Compl. at 5.  Like the other claims, it too falls by the wayside.

\*   \*   \*

A final note bears mention.  Much of the Tribe's Opposition focuses on why this case should advance to discovery, suggesting that the above analysis is somehow premature.  See Opp. at 1, 5–8.  The Tribe has not, however, filed a motion for expedited discovery nor shown that it is appropriate here, where there is no explanation of how discovery would bear on anything relevant to the Court's analysis.  In any event, the Court need not wait for discovery to assess whether Plaintiff's causes of action survive the present Motion.  See Iqbal, 556 U.S. at 686 (where plaintiff's "complaint is deficient under Rule 8, he is not entitled to discovery").  They do not.

### IV.   Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  November 1, 2023